**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1822

_____

MATTHEW ZELEDJIESKI,
                                                Appellant

v.

SUPERINTENDENT GREENE SCI;
ATTORNEY GENERAL PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-16-cv-02257)
District Judge: Honorable Matthew W. Brann

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 18, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: November 12, 2020)

_____

OPINION*

_____

BIBAS, Circuit Judge.

Trial lawyers make countless hard choices. They must decide what points to argue,

what evidence to introduce, and what objections to make. When a criminal defendant gets

convicted, it is tempting to critique those choices with the benefit of hindsight. But lawyers

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

are not prophets. Gambles can be reasonable even when they do not pay off. Lawyers often pursue sound strategies and tactics yet still lose, just because they were dealt bad hands.

So it was here. A Pennsylvania jury heard an eyewitness testify that Matthew Zeledjieski stabbed a man to death. It heard two other witnesses testify that Zeledjieski confessed to the crime. Then it convicted him of murder. On habeas, Zeledjieski now argues that his trial lawyer was ineffective, but we disagree. Because his lawyer's judgment calls were reasonable, we will affirm.

## I. BACKGROUND

### A. Zeledjieski's murder trial, appeal, and habeas

In 1992, a Pennsylvania man was stabbed to death. The Commonwealth tried Zeledjieski for the murder. It had no physical evidence but one eyewitness: Zeledjieski's friend, John Lynch. Lynch testified that one night, he and Zeledjieski were driving around when the victim came up to their car. He saw Zeledjieski punch the victim through an open car window, chase him, and repeatedly punch him in the back. Later that night, Lynch heard Zeledjieski admit to stabbing someone and saw that he had a punch-dagger on him. Two other witnesses, Tina Worth and Todd Mastrobuoni, testified that they also heard him admit to the stabbing.

Zeledjieski denied all that. Though he chose not to testify at trial, his lawyer Andrew Hood argued that he had nothing to do with the murder. Instead, Hood tried to show that Lynch had probably killed the victim to rob him. Hood repeatedly attacked Lynch's credibility, stressing that he had a strong incentive to blame Zeledjieski. He cross-examined Lynch on his association with a violent, racist group called skinheads. He argued that the

2

evidence linked Lynch, but not Zeledjieski, to skinheads. Hood stressed that Lynch was involved two weeks later in a robbery that led to the stabbing of a taxi driver, supposedly by Lynch's accomplice. And he put on witnesses who suggested that Lynch would say whatever it took to beat this case or the taxi-driver one.

But the defense fell short. The jury convicted Zeledjieski, the judge sentenced him to life in prison, and the state appellate court affirmed. He filed a state postconviction-relief (PCRA) petition claiming ineffective assistance of counsel, but the trial court denied the petition. His new lawyer then tried to add new claims, but the trial court rejected them as untimely. The state appellate court affirmed.

Zeledjieski filed a federal habeas petition, again arguing ineffective assistance of trial counsel. Adopting the magistrate judge's report and recommendation, the District Court rejected all the claims on the merits but issued a certificate of appealability. *Zeledjieski v. Gilmore*, No. 4:16-CV-02257, 2019 WL 1227458, at *4 (M.D. Pa. Mar. 15, 2019).

**B. Standard of review**

Some of Zeledjieski's claims were rejected by the state courts on the merits. To succeed on them, he must show that the state court's rejection of those claims was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or rested on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "highly deferential standard" of review. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).

Zeledjieski's other claims were not considered by the state courts because he raised them too late. Normally, those procedural defaults would bar him from raising them in

3

federal court. 28 U.S.C. § 2254(b)(1)(A). But the District Court excused his default because his PCRA lawyer was ineffective, relying on *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). Because Pennsylvania does not appeal that conclusion, we will review those claims de novo. *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017). The District Court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction under § 2253(c).

## II. THE DISTRICT COURT PROPERLY DENIED ZELEDJIESKI'S CLAIMS THAT HIS TRIAL COUNSEL WAS INEFFECTIVE

Criminal defendants have the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show that his Sixth Amendment right was violated, a habeas petitioner must show both that his lawyer performed deficiently and that this deficiency prejudiced the outcome. *Id.* at 687, 694. When we judge a lawyer's performance, we must "indulge a strong presumption that [his] conduct f[ell] within the wide range of reasonable professional assistance." *Id.* at 689. It is not enough to show that some other lawyer would have done things differently; each lawyer has "wide latitude" to make tactical choices and judgment calls. *Id.* To rebut the presumption of effectiveness, a petitioner must show that no reasonable lawyer would have done what this lawyer did. *See Rompilla v. Beard*, 545 U.S. 374, 389 (2005).

Zeledjieski claims that five of Hood's decisions at trial were ineffective. We disagree about each.

### A. Hood was not ineffective for letting the jury hear about skinheads

Zeledjieski, Lynch, Mastrobuoni, and Lynch's codefendant in the taxi-driver case were all at some point either skinheads, skinhead-wannabes, or friends with skinheads. Both

4

sides mentioned those affiliations throughout the trial. Zeledjieski claims that these references poisoned the jury against him. He argues that Hood was ineffective in mentioning the skinhead affiliations and not objecting to the prosecution's references.

The PCRA court considered this argument and rejected it. It found that telling the jury about the skinhead affiliations was a reasonable strategic choice: While Zeledjieski had skinhead connections, so did the prosecution's star witness, Lynch. So "[i]t was within the range of reasonable judgment for counsel to think [the skinhead references] would be of a greater detriment to the Commonwealth's witnesses, than it would be for" Zeledjieski. *Commonwealth v. Zaledzieski*, No. CP-45-CR-678-1992, 2014 WL 5818608, at *20 (Jan. 9, 2014).

Under *Strickland*, we must review Hood's performance deferentially. And under § 2254(d), we must also review the PCRA court's application of *Strickland* deferentially. So we must be "doubly" deferential: we cannot find Hood's strategy ineffective if "there is any reasonable argument that [he] satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

There is a reasonable argument that Hood satisfied *Strickland*. This case was hard to defend. Though it pitted Zeledjieski's word against Lynch's, two witnesses corroborated Lynch's story. Hood could have reasonably thought that his best bet was to tear down Lynch's credibility however he could, even if Zeledjieski would look worse too. Hood could have reasonably judged that tarnishing both sides would be a net positive, because the prosecution bore the burden of proof. And Hood had some reason to think that the skinhead references would *not* tarnish both sides equally: while Lynch admitted that he

5

once belonged to a skinhead gang, the testimony showed only that Zeledjieski was friends with skinheads.

True, Hood's strategy did not succeed. But we must look at the reasonableness of that strategy at the time, without "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Defendants have no right to a lawyer who gets them acquitted, but only to one who makes decisions that were reasonable "from counsel's perspective at the time." *Id.* Taking risks is often reasonable even though many of those risks will not pan out.

Zeledjieski responds that even if tarnishing Lynch would have been reasonable, Hood did not really follow that strategy. But the PCRA court disagreed. It found that "revealing the involvement with the skinhead organization was part of defense counsel's strategy to discredit the Commonwealth's witnesses and shift the blame to Lynch." *Zaledzieski*, 2014 WL 5818608 at *20. We must defer to that factual finding unless it was unreasonable in light of the evidence presented to the state court. 28 U.S.C. § 2254(d)(2). It was not. Hood brought up Lynch's skinhead connections throughout the trial. *E.g.*, App. 537–39, 577, 774–75. And at the state evidentiary hearing, Hood testified that those references were deliberate. Thus, the record supported the PCRA court's finding that Hood's strategy was to attack Lynch as a skinhead. Because that strategy was reasonable, Hood was not ineffective.

**B. Hood reasonably did not object to vouching**

Next, Zeledjieski complains that Hood let the prosecution vouch for its witnesses. Prosecutors vouch when they (or their witnesses) assure the jury that a witness is credible. Vouching can imply that the prosecution knows of "evidence not presented to the jury …

6

and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." *United States v. Young*, 470 U.S. 1, 18–19 (1985). It also risks leading the jury to trust the Government's view of the evidence presented rather than its own. *Id.*

Zeledjieski alleges that the prosecution thrice vouched and that Hood thrice failed to object. Because the PCRA court did not address most of these claims, we will review them de novo and reject them on the merits. Hood's decisions not to object were reasonable.

*1. The interrogation videos.* At trial, the prosecution played videos of Lynch's and Zeledjieski's interrogations. At the start of Lynch's video, an officer told him that they already knew the details of the stabbing. Lynch then answered questions for about twenty-five transcript pages. At the end, though, he could not recall what color or kind of shirt Zeledjieski was wearing that night. After Lynch twice said he did not know, he explained: "I would tell ya. I told you everything else." App. 689. Another officer responded: "I believe you, John." *Id.* Meanwhile, after Zeledjieski said that he did not remember what he did the night of the stabbing, his interrogator ended the interview as a "waste [of] time," allegedly implying that he did not believe Zeledjieski. App. 695. Zeledjieski challenges those parts of the videos as vouching.

We disagree. The officers' statements were just part of their interrogation tactics. For example, they first claimed that they already knew about the stabbing, apparently to scare Lynch into telling the truth. When he could not recall Zeledjieski's shirt, the officer's expression of belief seemed calculated to earn Lynch's confidence, not to vouch for his lack of recall. The jury probably realized all this and had little reason to think that the

7

Government had undisclosed evidence. And we do not think that Zeledjieski's interrogator was implying that he was lying. Rather, after Zeledjieski said he could not recall that night, the interrogator just doubted that Zeledjieski would say anything helpful. So a vouching objection probably would have failed. Hood reasonably decided not to make the weak objection.

*2. The detective's testimony.* Later, Hood cross-examined the investigating detective. Hood wanted to show that the detective had prejudged Zeledjieski's guilt and thus investigated the case hastily. He got the detective to admit that when another detective interrogated Lynch, he "wasn't listening closely." App. 721. The detective also admitted that he "believed most of what John Lynch told me" and "found him to be an honest individual." *Id.* Zeledjieski claims that statement was vouching. Even if it was, it did not prejudice him. The statement supported Hood's theory that the investigation was slipshod. Baiting that answer was a reasonable tactic.

*3. The prosecution's closing statement.* Finally, in its closing, the prosecution argued that the jury should trust Lynch over Zeledjieski. It focused on the trial evidence, but several times implied that the jury should trust it just because it was the Government. For instance, the prosecutor argued that the witnesses are "the kind of people the police and the prosecutor deal with every day …. So, we're accustomed to dealing with these types of people." App. 815. Zeledjieski says Hood should have objected to this alleged vouching.

Even if the statements were vouching, not objecting was reasonable. Just because an objection has merit, "it does not follow that counsel was incompetent for failing to [make it]. Focusing on a small number of key points may be more persuasive than a shotgun

8

approach." *Yarborough v. Gentry*, 540 U.S. 1, 7 (2003) (per curiam). Sometimes, a valid objection might even backfire; "object[ing] to [a] prosecutor's remark" might "draw attention to it." *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Here, the arguable vouching was scattered across a much larger, legitimate argument by the prosecution. Hood could have reasonably thought that the jury would forget about the vouching or that objecting would backfire, searing the words into the jurors' minds. He reasonably let it go.

### C. Hood reasonably introduced testimony about another stabbing involving Lynch

Zeledjieski also argues that Hood should not have brought in evidence of Lynch's role in another stabbing. Less than two weeks after the stabbing charged here, Lynch was involved in robbing and stabbing a taxi driver, who survived. Lynch admitted on the stand that he had been charged with that stabbing. But he gave no other details and claimed that the victim had identified someone else as the stabber.

To add detail, Hood introduced the testimony of the detective who had investigated the other stabbing. The detective said that Lynch and a friend were in a taxi when the driver was stabbed. But he confirmed that the driver identified the stabber as Lynch's friend. He added, though, that Lynch had also attacked the victim—which Lynch had denied to the police.

Zeledjieski challenges Hood's introduction of the detective's testimony as ineffective. Because Lynch was likely not the stabber in the second case, Zeledjieski claims, the testimony undercut the theory that Lynch was the stabber in this case. The PCRA court never considered this argument. So we review it de novo.

9

Harping on the second stabbing was reasonable. Even though the taxi driver did not think that Lynch held the knife, his involvement was suspicious. And Lynch's lie to the police suggested that he tended to blame others for his crimes. Because Lynch said little about the taxi driver, Hood needed the detective's testimony to make these points. Even though it would have been better if Lynch had been the second stabber, Lynch's involvement and lie were better than nothing. Hood reasonably highlighted it.

### D. Hood reasonably omitted an alibi defense

Next, Zeledjieski complains that Hood did not put on an alibi defense. His family, he argues, was ready to testify that he was home when the stabbing happened. Hood did not use that evidence.

But when Zeledjieski raised this argument at the state evidentiary hearing, Hood remembered the story differently. According to Hood, after Zeledjieski's family told him about the alibi, Zeledjieski "emphatically" "pointed out [that the alibi] was [for] the wrong night, and he gave reasons why it was the wrong night." App. 946, 953. The PCRA court credited this testimony, so it found that Hood's omission of the alibi was reasonable. We agree.

### E. Hood reasonably did not ask for a polluted-source instruction

Finally, Zeledjieski argues that Hood should have asked the judge to give a polluted-source instruction: "[Y]ou should view the testimony of an accomplice [Lynch] with disfavor because it comes from a corrupt and polluted source." App. 78 n.13. Because the PCRA court never considered this argument, we review it de novo.

10

Omitting the instruction was reasonable. Zeledjieski's theory was that he and Lynch were *not* accomplices. If the judge had described the two as accomplices, the jury might have thought that the judge did not believe Zeledjieski's story. It was reasonable to fear that the instruction would backfire.

## F. We need not address cumulative prejudice

We have not yet decided whether any prejudice from multiple claims of deficient performance should be analyzed together under *Strickland* or as cumulative error under the Due Process Clause. *See Williams v. Superintendent SCI Greene*, No. 11-4319, 2012 WL 6057929, at *1 & n.2 (E.D. Pa. Dec. 4, 2012). So we invited counsel to brief that issue. But because Zeledjieski does not show deficient performance on any of his claims, we leave that question for another day.

\* \* \* \* \*

Hood had to make dozens of strategic decisions. As Zeledjieski has forcefully shown, a different lawyer could have reasonably made some of them differently. But Hood's choices were reasonable too, and reasonable choices are not constitutionally ineffective. So we will affirm.

11