NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 20-1701

—————

AMIR CRUZ-WEST,
                    Appellant,

v.

SUPERINTENDENT FAYETTE SCI;
DISTRICT ATTORNEY OF THE CITY OF PHILADELPHIA;
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

—————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:17-cv-01262)
District Judge: Honorable Juan R. Sanchez

—————

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 20, 2021

Before: Ambro, Restrepo, Rendell, *Circuit Judges*

(Filed: May 14, 2021)

—————

**OPINION**[*]

—————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Amir Cruz-West appeals the denial of his petition for a writ of habeas corpus. Because we cannot excuse Cruz-West's procedural default, we will affirm.

## I. BACKGROUND

In 2008, Cruz-West shot and killed Troy Jennings and Marcellus Johnson outside the home of Albert Crane, a friend Cruz-West was visiting. Cruz-West was charged with two counts of first-degree murder and one count of possessing an instrument of a crime. A jury in the Philadelphia County Court of Common Pleas convicted him on all counts, and he was sentenced to life imprisonment.

Cruz-West had known both Jennings and Johnson for some time. But his relationship with Jennings was antagonistic. A few years before the 2008 killing, Jennings had shot at Cruz-West's sister's friend in front of Cruz-West's sister while the sister's friend was in his car. And just a few months before the 2008 killing, Cruz-West and Jennings brawled inside Crane's house, after which Jennings retrieved a shotgun from his mother's house (which was across the street), walked with it toward Cruz-West, and said, "next time [you] come around here, [you] come around this block, [you] will be shot." App. 134.

That antagonism continued the day of the killing. At trial, Cruz-West testified that, as he approached Crane's house, Jennings, who was on the street, "star[ed] at [him] aggressively" and asked Cruz-West, "didn't [I] tell [you] not to come around the block anymore" and "that if [you] came back around, [I] was going to shoot [you?]" App. 231. At that, Cruz-West entered Crane's house, locked the door behind him, and sat on the stairs that led up to Crane's apartment.

According to witness testimony, Jennings remained outside, yelling: "Come on out. Let's fight. Today [is] the day. We['ve] got to fight. I told you don't come around here." App. 53. The yelling continued, and Crane went outside to calm Jennings down. Johnson arrived and asked Crane for a cigarette. Crane went back inside to get him one. He passed Cruz-West on the stairs and, according to Cruz-West, told Cruz-West that Jennings and Johnson were "strapped," which Cruz-West took to mean they were carrying guns. App. 136.

Crane went back outside, and Cruz-West went upstairs to Crane's apartment, retrieved a shotgun, and sat at the top of the stairs. From the top of the stairs, Cruz-West testified that he heard Jennings say, "If he['s] not going to come out, I'm going to come in there." App. 136. So Cruz-West, who said he was "definitely scared now," descended the steps, "walked out the door," "took two steps on the porch," and "started shooting." App. 136. He said he saw and meant to shoot Jennings but claimed he "didn't see anything else," including Johnson. App. 136 ("I was shooting so wildly, I couldn't see anything."). By the time he stopped shooting, Cruz-West realized that he hit not just Jennings but also Johnson, who had been standing behind Jennings. Both Jennings and Johnson were hit with multiple rounds, and both died the same day. On cross-examination, Cruz-West conceded that on the day of the shooting he never saw Jennings or Johnson with a gun, knife, or any other weapon.

At the close of evidence, the trial court held a charging conference. As relevant here, Cruz-West's trial counsel sought a jury instruction on self-defense. After some back and forth, the trial judge agreed to give one. The trial judge also instructed the jury on

3

first- and third-degree murder, and on two theories of voluntary manslaughter: a killing based on an unreasonable belief in the need to use deadly force in self-defense, and a killing committed in the heat of passion based on a series of related events. After deliberations, a jury convicted Cruz-West on all counts, and he was sentenced to life imprisonment. Cruz-West's convictions and sentence were affirmed on direct appeal.

In 2013, Cruz-West filed a pro se petition for postconviction relief in the state court. That Court appointed counsel. But Cruz-West's counsel found no merit in Cruz-West's claims. So he filed a so-called *Finley* letter, *see Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988), asserting that the claims in Cruz-West's petition were without merit and seeking to withdraw. The Court permitted Cruz-West's counsel to withdraw and dismissed Cruz-West's postconviction petition. That dismissal was upheld by the state appellate court and the Pennsylvania Supreme Court.

In 2017, Cruz-West sought habeas relief in federal court. His petition asserted two grounds for relief—ineffective assistance of trial counsel for failing to challenge or request certain jury instructions, and ineffective assistance of trial counsel for failing to object to comments made by the prosecutor during closing arguments. The District Court referred the petition to a Magistrate Judge, who, in a thorough report and recommendation, recommended denying each claim as procedurally defaulted or otherwise meritless. The District Court adopted the Magistrate Judge's recommendations and denied Cruz-West's petition for habeas relief.

We granted a certificate of appealability on just one issue: Did Cruz-West's trial counsel perform ineffectively by failing to request a jury instruction concerning Jennings's

4

prior acts of violence? The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have appellate jurisdiction to review the certified issues under 28 U.S.C. § 2253.

## II. DISCUSSION

Cruz-West contends that constitutionally adequate counsel would have requested a jury instruction explaining how Jennings's prior acts of violence toward him could have caused him to fear serious bodily harm at the time of the shooting. But Cruz-West's claim of ineffective assistance of trial counsel for failure to request the prior-violence instruction was never raised on state collateral review. It is thus procedurally defaulted, as Cruz-West concedes.

Nevertheless, the Supreme Court has carved out a "narrow exception" to procedural default. In *Martinez v. Ryan*, the Supreme Court held that prisoners may bring their claims of ineffective assistance of trial counsel on federal habeas if in their state habeas proceeding they had "no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012). To qualify for *Martinez*'s exception, a habeas petitioner must show three things. He must show (1) that the procedural default was caused by either the lack of counsel or ineffective counsel on post-conviction review; (2) that this lack or ineffectiveness of counsel was in the first collateral proceeding when the claim could have been heard; and (3) that the underlying claim of ineffective assistance of trial counsel is "'substantial.'" *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (quoting *Martinez*, 566 U.S. at 14); *see also Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 762 (3d Cir. 2018); *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 237-38 (3d Cir. 2017).

5

We need only negate one prong to reject a *Martinez* claim. And where the claim that state-habeas counsel provided ineffective assistance "stems from the strength of [the petitioner's] underlying ineffective assistance of trial counsel claim," courts may begin with *Martinez*'s substantiality requirement first. *Bey*, 856 F.3d at 237-38. We therefore confine our analysis to determining whether Cruz-West's underlying ineffective-assistance-of-trial-counsel claim is "substantial."

To satisfy *Martinez*'s substantiality prong, Cruz-West must show that "'the claim has some merit[.]'" *Cox*, 757 F.3d at 119 (quoting *Martinez*, 556 U.S. 1, 14). A claim has some merit so long as "reasonable jurists could debate" its merits, or it "deserve[s] encouragement to proceed further." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). In assessing whether Cruz-West's ineffective-assistance-of-trial-counsel claim is substantial, *Strickland*'s two-step analysis serves as a guide, "but we remain mindful that the 'substantiality' inquiry 'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Id.*; *see also id.* at 378 (holding because trial counsel's deficiency was "clearly substandard under the first prong of *Strickland*, we need not concern ourselves with the prejudice prong of *Strickland* in order to satisfy *Martinez* and excuse the procedural default," and suggesting but not deciding that a less-clear case of deficient performance might require some proof of prejudice).

Cruz-West first contends that this Court already has decided that his ineffective-assistance-of-trial-counsel claim is "substantial." Appellant Reply Br. 16. Cruz-West observes that *Cox* (and later cases like *Richardson*, *Preston*, and *Bey*) stated that *Martinez*'s

substantiality requirement is "analogous to the substantiality requirement for a certificate of appealability." *Cox*, 757 F.3d at 119; *see also Richardson*, 905 F.3d at 763 (noting that a petitioner, to prove substantiality, "must show that 'the claim has some merit,' as required for a certificate of appealability"); *Preston*, 902 F.3d at 377 (noting the substantiality prong is "analogous to the substantiality requirement for a certificate of appealability"); *Bey*, 856 F.3d at 238 (reading *Martinez* as "suggesting that we apply the standard for issuing certificates of appealability in resolving the inquiry into what constitutes a 'substantial' claim"). And Cruz-West further observes that a previous panel of this Court "has already determined that a certificate of appealability was appropriate on this claim." Appellant Reply Br. at 16 (citing App. 40-41). So, to Cruz-West, the substantiality inquiry was resolved once we granted the certificate of appealability.

We do not read those cases that way. For one, in *Richardson*, *Preston*, *Bey*, and *Cox*, we conducted the "substantiality" inquiry even after granting the certificate of appealability. That suggests that the grant of a certificate is not decisive. For another, in other cases we have granted a certificate of appealability on a *Martinez* issue and later found the underlying *Strickland* claim to be not substantial. *See, e.g.*, *Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014); *see also Smith v. Superintendent Mahanoy SCI*, 733 F. App'x 613, 617 (3d Cir. 2018); *Kelly v. Superintendent Graterford SCI*, 719 F. App'x 153, 159 (3d Cir. 2017). Finally, we often grant or deny motions for a certificate of appealability without soliciting the views of the opposing party, as happened here. It may very well be the case that a grant of a certificate of appealability on a *Martinez* claim will often correspond to a

7

finding that the underlying ineffective-assistance-of-trial-counsel claim is substantial. But the two inquiries are independent.

Here, Cruz-West's ineffective-assistance-of-trial-counsel claim is not substantial. Guided by *Strickland*'s two-step framework, it is hard to see how the failure of Cruz-West's trial counsel to request or secure a prior-violence instruction constituted deficient performance. Cruz-West points to a series of Pennsylvania state court cases that he believes stand for the proposition that trial courts must give a prior-violence instruction whenever a victim's prior acts of violence are relevant to a defendant's mental state. Appellant Br. at 19 ("Pennsylvania law also requires that an instruction be given to help the jury consider evidence of prior violent acts."). We are not persuaded that those cases mandate a jury instruction here.

In any case, we do not need to resolve this question, as even if the trial judge instructed the jury to explicitly consider Jennings's prior acts of violence, we do not believe the jury would have reached a different result. Cruz-West's trial counsel secured instructions on both self-defense and voluntary manslaughter. Through those instructions, the trial judge made clear to the jury that they could not find Cruz-West guilty of any crime "'unless you are satisfied, beyond reasonable doubt, that [Cruz-West] did not reasonably believe he was in danger—in immediate danger of death or serious bodily injury, or that [Cruz-West] did not reasonably believe it was necessary . . . to use deadly force to protect himself[.]'" App. 20 (quoting trial transcript). Further, the jury was never instructed that it could not consider Jennings's prior acts of violence toward Cruz-West. And indeed, through testimony at trial and during closing, Cruz-West's trial counsel thoroughly

explained how Jennings's prior acts of violence meant Cruz-West did not have the requisite mental state to be convicted of any crime. As a result, we are persuaded the jury already considered Jennings's prior acts of violence, and we thus conclude that Cruz-West cannot show that there is a reasonable probability of a different outcome had the jury received an explicit instruction about them.

### III. CONCLUSION

For these reasons, Cruz-West's claim that his trial counsel was constitutionally ineffective for failing to request a jury instruction concerning Jennings's prior acts of violence is not "substantial" under *Martinez*. Therefore, Cruz-West's failure to present that claim on state collateral review cannot be excused, and review and relief is not available on his defaulted *Strickland* claim.