NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1737
_____

SPENCER WALLACE,
Appellant

v.

SUPERINTENDENT ROCKVIEW SCI;
THE ATTORNEY GENERAL PENNSYLVANIA;
THE DISTRICT ATTORNEY PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-18-cv-03509)
District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 21, 2023

BEFORE:  JORDAN, GREENAWAY, JR., and McKEE, *Circuit Judges.*

(Filed: June 2, 2023)
_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*.

Appellant Spencer Wallace appeals from the District Court's denial of his habeas

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

petition. For the following reasons, we will affirm the denial.

## I. Background

Spencer Wallace was tried by a jury in the Court of Common Pleas of Philadelphia County for the murder of Harry Ballard. He was charged with the following offenses: Murder of the First Degree, violations of Pennsylvania's Uniform Firearms Act (VUFA charges), and Possession of an Instrument of Crime (PIC charge). The jury convicted Wallace, and he was sentenced to a mandatory term of life in prison without parole on the murder offense with a consecutive term of 2 to 7 years for the VUFA charges and 1 to 5 years on the PIC offense, all to run consecutively. In reaching a guilty verdict, the jury rejected Wallace's defense that he did not possess the firearm used to shoot Ballard.

Wallace's principal argument on appeal centers around the trial court's jury instructions. The trial court instructed the jury prior to the guilty verdict. As the court was instructing the jury on the murder count, the court explained that there were three elements that the prosecution had to prove to be successful: (1) the death of the victim, (2) that the defendant killed the victim, and (3) that the defendant killed the victim with the specific intent to kill and with malice. The court explicitly noted that the first element was not disputed because "there's no question" that the victim was dead. A307. On the murder offense, the court continued onwards to explain

> [w]hen deciding whether or not *the defendant* had the specific intent to kill, you should consider all the evidence regarding his words and conduct and the attending circumstances that might show his state of mind.

A307 (emphasis added). The jury was instructed the following on the PIC offense:

2

> In order to find the defendant guilty of this offense, you have to find, first of all, that the defendant possessed a firearm.  To possess an item, the defendant must have the power to control it and the intent to control it.  Secondly, that the firearm was an instrument of a crime.  An instrument of a crime is anything that is used for criminal purposes and possessed by a defendant at the time of the alleged offense under circumstances that are not manifestly appropriate for any lawful uses it might have . . . . [T]he second element, that the firearm was an instrument of a crime, has been proven by the facts of this case that are not contradicted; *and that the defendant possessed the firearm with the intent to attempt or commit a crime with it—in this case the crime of murder.  So what you have to decide is whether or not the defendant possessed a firearm.*

A308 (emphasis added).  At multiple points, the trial court retold the jurors that they were the sole judges of the facts and that they had to weigh the evidence presented and making any logical inferences.  Neither defense counsel nor the prosecutor made objections to the court's charge to the jury.

Wallace used both state and federal processes to challenge his conviction.  After unsuccessfully appealing his verdict and sentence, Wallace requested relief under Pennsylvania's post-conviction relief process.  The Superior Court of Pennsylvania affirmed the denial of post-conviction relief without an evidentiary hearing.  *Commonwealth v. Wallace*, No. 913-EDA-2016, 2017 WL 6181826, *8 (Pa. Super. Ct. Dec. 8, 2017).  Wallace petitioned for allowance of appeal, which the Pennsylvania Supreme Court denied.  *Commonwealth v. Wallace*, 187 A.3d 913 (Pa. 2018).  Wallace also filed a 28 U.S.C. § 2254 habeas petition raising multiple claims, only two of which are relevant here: (1) trial counsel was ineffective for not objecting to the trial court's jury instructions because the court directed a verdict against Wallace on both the VUFA and PIC charges and (2) trial counsel was ineffective for not objecting to the trial court

3

allegedly inserting its own opinion that Wallace possessed a firearm with intent to commit murder.[1] Wallace's habeas petition was referred to a magistrate judge. The magistrate judge issued a report and recommendation, advising that the petition be dismissed in full. The magistrate judge concluded that both ineffective assistance of counsel claims were procedurally defaulted because the Superior Court of Pennsylvania based its decision on an independent and adequate state law ground that barred review of the claim. The magistrate judge also concluded that Wallace failed to exhaust his claim under federal law because he did not "'fairly present' his due process argument in state court." A111.

After reviewing the magistrate judge's Report and Recommendation, the District Court denied Wallace's habeas petition. However, the court disagreed with the magistrate judge that these two claims were procedurally defaulted. The District Court concluded that Wallace had adequate citations to federal case law to put the Superior Court of Pennsylvania on notice that Wallace was raising a federal due process claim. Proceeding to the merits, the District Court proceeded to the merits of the claim and held that the Superior Court of Pennsylvania correctly applied federal law in analyzing the jury instruction issue as pertaining to the VUFA and PIC charges, and that Wallace could not show prejudice.

---

[1] The District Court granted a certificate of appealability on both claims.

4

## II.   Discussion[2]

Wallace urges us to conclude that his trial counsel was ineffective for failing to object to the trial court's jury instructions, which he argues constituted a directed verdict that violated his right to due process. We decline to do so; we agree with the District Court's denial of his habeas petition on the merits.

### a.  Legal Standards

An individual alleging ineffective assistance of counsel must prove two elements: (1) counsel's performance was deficient, determined by ascertaining whether counsel's representation fell below an objective standard of reasonableness and (2) deficient performance prejudiced the defendant, which requires that the outcome of trial would have been different except for counsel's error. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Antiterrorism and Effective Death Penalty Act (AEDPA) changed the standard for federal courts reviewing state-court judgments through 28 U.S.C. § 2254 habeas petitions. A federal court can only grant a habeas petition if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254(a). The District Court granted a certificate of appealability. We have jurisdiction pursuant to 28 U.S.C. §§ 2253(c)(1)(A) and 1291. We agree that § 2254(d) does not bar relief and exercise plenary review over a district court's dismissal of a habeas petition where the court did not hold an evidentiary hearing. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016) (en banc).

(2) "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also Williams v. Taylor*, 529 U.S. 362, 375–390 (2000).

This standard is exacting—the first requirement is only met when there is "no possibility for fairminded disagreement" and a party can demonstrate that "Supreme Court precedent *requires* a contrary outcome." *Spanier v. Dir. Dauphin Cty. Prob. Servs.*, 981 F.3d 213, 228 (3d Cir. 2020) (cleaned up). The second requirement is met when a state court's decision is based on an unreasonable determination of the facts and the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The Due Process Clause of the Fourteenth Amendment protects defendants from jury instructions that may inadvertently decrease the burden of proof on the Government because it requires that each element of an offense be proven beyond a reasonable doubt. *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 392 (3d Cir. 2020) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). A conviction violates a defendant's due process right if there is "ambiguity, inconsistency, or deficiency" in the jury instruction "such that it creates a reasonable likelihood the jury misapplied the law and relieved the government of its burden . . . ." *Id.* (cleaned up). In evaluating such a due process claim, the court must independently review how a reasonable jury would have interpreted the instructions. *Id.*; *Francis v. Franklin*, 471 U.S. 307, 316 (1985). The court must focus on the challenged language but consider it in the context of the whole charge to determine whether there is a reasonable likelihood that the jury applied the instructions in a manner

6

that violated due process rights. *Tyson*, 976 F.3d at 392.

### b. Analysis

Viewing the jury instructions as a whole makes clear that the trial judge was not issuing a directed verdict. If the disputed language is looked at in isolation, one may conclude that the trial court was pronouncing Wallace to be the perpetrator during the charge, which would not pass constitutional muster. But reviewing the rest of the charge shows that the trial court repeatedly instructed that it was the jury's duty, and not the court's, to determine whether Wallace was the perpetrator.

There is no reasonable likelihood that the jury was misled in convicting Wallace. Wallace's due process rights under the Fourteenth Amendment were not violated by the trial court's jury instructions as a whole on either the VUFA charge or the PICU charge.[3] The specific language of the jury instructions that Wallace points to is the excerpt from the trial court's PIC instruction that "the second element, that the firearm was an instrument of the crime, has been proven by the facts of this case that are not contradicted; *and that the defendant possessed the firearm with the intent to attempt or commit a crime with it—in this case the crime of murder*." A308 (emphasis added). According to Wallace, that instruction implied that he possessed the gun and therefore had the intent to commit murder. We agree with the District Court's observation that this

---

[3] The District Court evaluated these claims together because the analysis requires identical legal principles and discussion of the facts. We adopt the same approach here for the same reason.

7

instruction, taken in isolation, would relieve the prosecution of its burden of having to prove mens rea.

But our analysis does not stop there. Before accidentally stating that "the defendant possessed the firearm with the intent to attempt or commit a crime with it," A308, the trial court properly instructed the jury on the mens rea element for first degree murder. This directive correctly explained the "state of mind," A307, requirement for first degree murder, and shows that, although the trial court may have made an error, the error was unlikely to have altered the juror's understanding of the mens rea burden of proof, *United States v. Pennue*, 770 F.3d 985, 990 (1st Cir. 2014) (error in jury instruction improbable to impact government burden of proof where erroneous instruction was surrounded by other correct instructions). The trial court, before and after the mistaken instruction, described the different mental states and how they were defined for the jurors to reach a verdict. The trial court went on to explain that the main contested element was possession of the firearm and that that was what the jury needed to decide. Interspersed throughout the jury instructions was the trial court's repeated directive that the jury was the sole arbiter of the facts and that the jury had to make logical inferences and credibility determinations about the evidence presented. This shows that despite the trial court's slip of the tongue in referring to the perpetrator as "the defendant," the inadvertent error did not decrease the Government's burden of proof at trial.

8

The trial court's emphasis, in the context of the PIC instruction, on possession of a firearm, as opposed to mens rea, is logical given Wallace's defense at trial. Wallace did not emphasize whether Ballard was killed by a firearm or whether someone used a firearm with the intent to commit a crime. The trial court's instructions were an attempt to focus the jury on the most contested element of the trial—who possessed the firearm. Neither party objected to the jury instructions before the case was submitted to the jury, indicating that counsel did not recognize an error. *See United States v. Flores*, 454 F.3d 149, 158 (3d Cir. 2006) ("[C]ounsel's failure to object leaves us with the impression that the misstatement in the oral charge was hardly noticeable.").

Considering the jury instructions as a whole, it is evident that the trial court's use of the word "defendant," instead of generic perpetrator, did not absolve the prosecution of meeting its burden to prove that Wallace possessed the firearm, killed Ballard, and did so with the specific intent to kill. The jurors were forcefully directed to disregard any factual errors made by the trial court, showing that the jury could make factual determinations for itself. We must assume that "the judge or jury acted according to law," *Strickland*, 466 U.S. at 694, and that the jurors followed the entirety of the instructions they received to evaluate each element of each offense, *United States v. Bryant*, 655 F.3d 232, 252 (3d Cir. 2011).

The Superior Court's analysis on jury instructions was not contrary to federal law and did not result in a decision based on an unreasonable application of the facts. This case is distinguishable from cases finding due process violations based on faulty jury

9

instructions.  *See, e.g., Bey v. Superintendent Green SCI*, 856 F.3d 230,  241–42 (3d Cir. 2017) (jury instructions resulted in prejudice because they misstated instruction expressly directing jury *not to* weigh most critical testimony to establishing defendant's guilt); *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 287–88 (3d Cir. 2018) (jury instructions relieved government of having to prove mental state because directives by the court did not contain specific-intent-to-kill instructions for accomplices); *Tyson*, 976 F.3d at 392–94 (jury instructions violated due process because they completely omitted the requisite mental state of an accomplice in first-degree murder).[4]

Instead, these facts are in line with our precedent in *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462 (3d Cir. 2017).  The trial court in *Mathias* made inconsistent statements about when an accomplice could be liable for first-degree murder, stating that jurors could find shared intent or that an accomplice's intent could be inferred by a principal's intent to kill.  *Id.* at 467–68.  The due process claim could not succeed on appeal because parts of the instructions "properly articulated the specific intent requirement."  *Id.* at 479.

---

[4] Wallace's discussion of the Court's ruling in *Sandstrom v. Montana*, 442 U.S. 510 (1979) provides no support for his position.  The Supreme Court held that jury instructions that allowed a jury to create a mandatory presumption or permissive inference where the burden to prove intent shifted to the defendant violated due process. *Sandstrom*, 442 U.S. at 515–16.  We find that the trial court's instruction here did not amount to a directed verdict or create a presumption or inference that resulted in improper burden-shifting by the court.  As described, the instructions as a whole maintain the proper burden on the prosecution, especially as relevant to the mental state required for conviction.

The inconsistencies in Wallace's jury instructions are even less concerning than in *Mathias*.[5] Taken as a whole, the jury instructions here incorporated the correct mens rea. The trial judge repeatedly stated the actual contested issue at trial and cabined her jury instructions by demanding the jury make its own factual findings. The instructions were correct—even with the trial court's verbal scrivener's error—with respect to the elements of the crimes and the prosecution's burden at trial.

This case is unlike *Querica v. United States*, 289 U.S. 466 (1933), where the Supreme Court determined that the trial court's statement "I think that every single word that man said, except when he agreed with the Government's testimony, was a lie" prejudiced the defendant. *Id.* at 468, 472. In reaching this conclusion, the Court reasoned that "the judge is not a mere moderator" such that the jury will give great weight to a judge's statements. *Id.* at 469. Although a judge may comment on evidence at trial, he or she must "make[] it clear to the jury that all matters of facts are submitted to their determination." *Id.* Here, the trial judge followed this rule by telling the jurors multiple times that they were the ultimate arbiters of the facts. The statement by the judge in this case was less damaging than the one in *Querica*; the court did not comment on any direct pieces of evidence and did not take a stance on any testimony. The

---

[5] The *Mathias* panel noted two lines of reasoning established by the Supreme Court of the United States that we include here for comprehensiveness. The first line of reasoning consisted of a discussion from *Francis v. Franklin*, 471 U.S. 307 (1985). 876 F.3d at 477–78. The second line of reasoning is from the Supreme Court's decision in *Middleton v. McNeil*, 541 U.S. 433 (2004) (per curiam). *Id.* at 478. We decline to resolve or comment on any alleged tension between these two cases, as documented in *Mathias*, because it is unnecessary to our decision.

11

accidental use of the word "defendant" instead of "perpetrator" in a jury instruction does not rise to the level of a judge categorizing an accused's action as a marker of guilt.

Because there was no due process violation in the instructions, Wallace's trial counsel did not perform deficiently when he did not object to the instructions. Consequently, Wallace's ineffective-assistance-of-counsel claim fails.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's denial of the habeas petition.