NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3325
_____

TYRIUS GREEN,
Appellant

v.

ATTORNEY GENERAL NEW JERSEY;
ADMINISTRATOR NEW JERSEY STATE PRISON

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-15-cv-01886)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 15, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, Circuit Judges.

(Filed: January 27, 2021)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Tyrius Green was convicted of murder and gun possession following a jury trial. Green claims he is entitled to habeas relief because (1) his Fifth Amendment and Fourteenth Amendment due process rights were violated by the trial court's factually erroneous jury instructions regarding the witnesses' purported in-court identifications, and (2) his Sixth Amendment right to effective assistance of counsel was violated by his trial counsel's failure to object to those instructions. The District Court denied relief because Green failed to show that the errors prejudiced him. We agree and will affirm.

I

In 2003, Edgerton Munroe was shot and killed in Trenton, New Jersey. Police obtained signed statements about the incident from five witnesses. Each witness placed Green at the scene of the crime and two identified him as the shooter. For instance, one witness stated that she recognized Green as the shooter based on his distinctive walk; another said he saw Green running from the scene just after the shots were fired; a third noted that she recognized Green as the shooter even though he wore a black mask across the bottom of his face because she had known Green "[s]ince he was a little boy" and would "know [him] anywhere," J.A. 357; another witness said that she at first believed the shooter was Green, but she called out to him and he did not answer; and a final witness said he did not witness the shooting, but he saw Green call Munroe over to him just before the shooting occurred.

At trial, the testimony of two witnesses differed from their written statements. The witness who previously identified Green as the shooter based on his distinctive walk stated she could not remember anything about the shooting because the incident happened years

earlier and she was using crack cocaine at the time. The witness who previously identified Green as the shooter and who stated she had known him since he was a boy provided contradictory testimony, noting instead that she did not know Green particularly well and was "cracked out" when she made the statement. J.A. 171-72, 178-79. Overall, the five witnesses each testified that they knew Green and identified him in court, but they did not specifically identify Green as the shooter.

After the evidence was presented, the trial court instructed the jury. In its instructions, the court erroneously referred to witnesses who supposedly made in-court identifications of Green as the shooter. Specifically, the trial court stated:

> Now, the State, in trying to meet [its] burden, presented the testimony of several witnesses who identified the defendant. You will recall that these witnesses identified the defendant in court as the person who committed the offenses charged. The State also presented testimony that on a prior occasion before this trial witnesses made such an identification . . . .
> . . .
> If you determine that the out-of-court identification is not reliable, you must still consider the witness's in-court identification of the defendant, if you find it to be reliable.
> . . .
> The ultimate issues of the trustworthiness of the in court and out-of-court identifications are for you to decide.

J.A. 328-29.

The trial court also reminded the jury that it was their job to weigh the evidence and determine the facts of the case. To that end, the trial court stated that "[r]egardless of what counsel may have said, regardless of what I may have said in recalling the evidence in this case, it is your recollection of the evidence that should guide you as sole judges of the facts[,]" adding shortly after, "you must rely solely on your understanding and

3

recollection of the evidence that was admitted during the trial." J.A. 322. No party objected to any part of the jury instructions.

The jury returned guilty verdicts. Green appealed his conviction to the New Jersey Superior Court, Appellate Division, arguing, in relevant part, that the in-court identification instruction deprived him of a fair trial. The Appellate Division agreed with Green that the trial judge made an error but concluded that the error did not have "the clear capacity to produce an unjust result." J.A. 377. Green then sought post-conviction relief, this time arguing that his trial counsel was ineffective for, among other reasons, not objecting to the erroneous instruction. The New Jersey Superior Court rejected Green's petition, holding that trial counsel's failure to object to the erroneous instruction did not fall below the standard of competent representation. The Appellate Division affirmed the denial of post-conviction relief, and the New Jersey Supreme Court denied the petition for certification.

Green petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, contending, among other things, that (1) the trial court's erroneous instruction violated his right to due process, and (2) his trial counsel was ineffective for failing to object to that instruction. The District Court rejected those contentions and denied Green's petition, but it granted a certificate of appealability on both issues. Green appeals.

4

II[1]

A

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254, restricts a federal court's power to grant a writ of habeas corpus when a state court has already denied the same underlying claim on the merits, unless the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1); Blystone v. Horn, 664 F.3d 397, 417 (3d Cir. 2011).  "[A] decision by a state court is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in the [Supreme] Court's cases or if it confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from the [Supreme] Court's precedent."  Blystone, 664 F.3d at 417 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "A state court decision is objectively unreasonable if the state court identifies the correct governing principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. (internal quotation marks, citation, and alterations omitted).

On direct appeal, the state court determined that the jury instruction error was harmless in that it did not have "the clear capacity to produce an unjust result[,]" J.A. 377.  This ruling constitutes an adjudication "on the merits" under AEDPA.  Johnson v.

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 2254.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

Lamas, 850 F.3d 119, 133-34 (3d Cir. 2017).  If we were reviewing such a ruling on direct appeal, we would review whether the error is harmless beyond a reasonable doubt under Chapman v. California, 386 U.S. 18, 24 (1967).  On collateral attack, however, a petitioner must show that the trial court's determination resulted in actual prejudice, which means that the error must have "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted).  In making that determination, we must also be mindful of AEDPA deference.  As result, we may not award § 2254 relief "unless the harmlessness determination itself was unreasonable."  Johnson, 850 F.3d at 134 (emphasis and citation omitted).  For the ruling to be unreasonable, it must be "so lacking in justification that the[] . . . error [is] well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Davis v. Ayala, 576 U.S. 257, 169-70 (2015) (citation omitted).  Put succinctly, in this context, "a state-court decision is not unreasonable if 'fair-minded jurists could disagree on [its] correctness.'"  Id. at 269. (alteration in original and citation omitted).

Green is correct that the identification jury instruction incorrectly stated that "several witnesses . . . identified the defendant in court as the person who committed the offenses charged."  J.A. 328.  The record reveals that while all five witnesses identified Green in court as someone they knew and that none of them identified him in court as the person who committed the crime.  It was erroneous for the trial court to note otherwise. Assuming that this error was one of constitutional magnitude, the state court's determination that it was harmless was not unreasonable.  Given all of the evidence, the

6

flawed instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict," Brecht, 507 U.S. at 637 (citation omitted), or "so infect[] the entire trial that the resulting conviction violates due process," Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citations omitted). More specifically, a fair-minded jurist could find that this error was harmless because there was considerable evidence proving that Green killed Munroe. First, the testimony of two witnesses, neither of whom actually witnessed the shooting, place Green at the scene of the crime with the victim: one witness testified that Green called Munroe over to him just before the shooting and the other witness testified that he saw Green running from the scene just after the shots were fired. Second, in the days after the incident, two other witnesses signed written statements identifying Green as the shooter, and these statements were introduced at trial as substantive evidence. While these two witnesses retracted from their written statements at trial, the jury was entitled to view the written statements as more credible than the in-court testimony.[2]

In sum, there was evidence placing Green at the scene of the crime and identifying him as the shooter. In light of this evidence and the trial court's instruction to the jury that their recollection of the evidence governed, the trial court's factually erroneous instruction did not "ha[ve] a substantial influence on the verdict. . . ." Yohn v. Love, 76 F.3d 508, 523 (3d Cir. 1996) (citation omitted). Accordingly, the state court's analysis of

---

[2] In fact, throughout the trial, Green's counsel repeatedly focused on whether the jury should believe the in-court testimony or the out-of-court written statements. The trial court's erroneous instruction was unlikely to distract the jurors from this key issue.

7

this issue was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Johnson, 850 F.3d at 134 (internal quotation marks and citation omitted).[3] Thus, the District Court correctly denied relief based upon Green's Fifth and Fourteenth Amendment due process claims.

B

Green's Sixth Amendment ineffective assistance of counsel claim also fails. Under the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984), a petitioner asserting ineffective assistance of counsel "must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." Blystone, 664 F.3d at 418 (citing Strickland, 466 U.S. at 687). Under the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

---

[3] The erroneous jury instruction also did not "relieve[] the government of its burden of proving every element beyond a reasonable doubt," Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 285 (3d Cir. 2018), because the language that Green challenges did not go to a specific element of the crime or otherwise reduce the state's burden of proof, cf. Tyson v. Superintendent Houtzdale SCI, 976 F.3d 382, 392 (3d Cir. 2020) (concluding there was a due process violation where erroneous jury instructions created "a strong likelihood the jury convicted [petitioner] as an accomplice to first-degree murder without finding he possessed the specific intent to kill.").

is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

Even if Green's trial counsel's failure to object to the erroneous jury instruction fell below an objective standard of reasonableness, Green has not demonstrated that he was prejudiced as a result. As already explained, the trial court's erroneous jury instruction did not harm Green as there no "grave doubt whether the error had a substantial or injurious effect or influence in determining the verdict" under <u>Brecht,</u> 507 U.S. at 637. For those same reasons, he cannot establish prejudice under <u>Strickland</u>. <u>See</u> <u>Preston v. Superintendent Graterford SCI</u>, 902 F.3d 365, 382 (3d Cir. 2018) ("The prejudice prong of the <u>Strickland</u> analysis is consistent with the general 'harmless error' standard applicable to all federal habeas petitioners alleging non-structural errors." (citation omitted)); <u>Whitney v. Horn</u>, 280 F.3d 240, 258 (3d Cir. 2002) ("[T]he ultimate issue under either [the <u>Brecht</u> or <u>Strickland</u>] test reduces to determining what effect, if any, the erroneous instruction had on the jury's verdict."). Thus, Green's ineffective assistance of counsel claim does not provide a basis for relief.

III

For the foregoing reasons, we will affirm the District Court's order denying Green's petition.

9